## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

MOATAZ MOHAMED, Individually and as
Personal Representative of the Estates of
ALY RASHAD ALY MOHAMED and
BARIA ZAKI MOHAMED, deceased,

Case No.

# CV12 3139

Judge:

         **Plaintiff,**

**Magistrate:**

-against-

# JOHNSON

NOLAN LAW GROUP, and DONALD
J. NOLAN, Individually,

# AZRACK, M.J.

         **Defendants.**

------------------------------------------------------X

### COMPLAINT

NOW COMES, the Plaintiff, MOATAZ MOHAMED, Individually and as Personal

Representative of the Estates of ALY RASHAD ALY MOHAMED and BARIA ZAKI

MOHAMED, deceased, by his attorneys, Wasser & Russ, LLP, and complains against

Defendants, NOLAN LAW GROUP and DONALD J. NOLAN, as follows:

### NATURE OF THE CASE

1.     This is a legal malpractice action arising out of and relating to <u>Moataz Mohamed,</u>

<u>et al. v. The Boeing Company, et al.</u>, No. 02-cv-1530 (E.D.N.Y. 2002), originally filed in the

Southern District of New York and then transferred to the Eastern District and consolidated with

several other related cases under the Case No. MD-00-1344 (BMC) (hereinafter the "Underlying

Case"). The defendants agreed to represent the plaintiff to prosecute a wrongful death action

against those responsible for the crash of EgyptAir Flight 990 in 1999, the Underlying Case. The

Court dismissed the Underlying Case because of the defendants' failure to appoint plaintiff as

personal representative. The Honorable District Judge Cogan dismissed the plaintiff's case, noting that a client is held responsible for their attorney's negligent conduct and the defendant's neglect in failing to appoint a special representative resulted in dismissal of the Underlying Case. As a result, Plaintiff lost the opportunity to recover appropriate damages resulting from his parents' deaths and was forced to settle the underlying case for an inadequate sum.

## JURISDICTION AND VENUE

2. Jurisdiction is based upon the diverse citizenship of the parties in that the Plaintiff is a citizen of California and each Defendant is a citizen of Illinois. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

3. Plaintiff, Moataz Mohamed, as personal representative of the Estates of ALY RASHAD ALY MOHAMED and BARIA ZAKI MOHAMED, deceased (hereinafter referred to as "Plaintiff"), is a resident and citizen of California.

4. Defendant, Nolan Law Group is and was at all times relevant hereto, a professional corporation or partnership organized under the laws of the state of Illinois, having its principle place of business in the State of Illinois and Cook County. The actions and/or inactions of the Defendant firm are about those of its officers and/or employees acting within the scope of their employment.

5. At all times relevant, the Nolan Law Group and Donanld J. Nolan did business in the state of New York.

6. At all times relevant, Donald J. Nolan was licensed to practice law in the state of New York.

7. Venue is proper because the majority of the acts complained of took place and originated in this District and the defendants do business in this District.

2

## FACTS RELEVANT TO THE UNDERLYING CASE

8.      On October 30-31, 1999, EgyptAir Flight 990 was a regularly scheduled flight originating from Los Angeles International Airport for a final destination at Cairo International Airport with a scheduled intermediate stopover at John F. Kennedy International Airport in New York.

9.      On October 30-31, 1999, the aircraft being operated as EgyptAir Flight 990 was registered with the government of Egypt under aircraft registration SU-GAP, a Boeing Model 767-366ER aircraft bearing serial number 24542 and production line number 282 ("the Boeing 767").

10.     Decedents, ALY RASHAD ALY MOHAMED and BARIA ZAKI MOHAMED, (hereinafter referred to as the "Mohameds"), boarded the aforesaid aircraft operated as EgyptAir Flight 990 on or about October 31, 1999, at LAX in Los Angeles, California.

11.     That on October 31, 1999, at approximately 1:50 a.m., Eastern Standard Time, the aircraft being operated as EgyptAir Flight 990 crashed into the Atlantic Ocean approximately sixty (60) miles south of Nantucket Island, Massachusetts.

12.     The Mohameds were killed as a result of the crash.

13.     On October 31, 1999, said Boeing 767 aircraft was being operated and used for the purposes for which it was designed, manufactured, assembled, inspected, tested, sold, intended to be used, and in a manner reasonably foreseeable to both the Boeing Company and the Parker Hannifin Corporation, and in a condition without substantial change from its original condition when it was sold and delivered by the Boeing Company.

14.     The subject Boeing 767 aircraft was defective, not fit for its intended purposes and unreasonably dangerous by reason of defective design, manufacture, assembly, inspection,

3

testing, warning, instruction, sale, service, repair, and/or maintenance on the part of both the Boeing Company and the Parker Hannifin Corporation.

15.    The Underlying Case alleged Boeing and the Parker Hannifin Corporation were negligent in one or more of the following ways:

>    (a) designed and manufactured defective elevator bellcrank assemblies that did not function properly causing abnormal elevator movements and hindering the Boeing 767's elevator system from functioning properly;
>
>    (b) failed to take corrective measures to ensure the Boeing 767 would not experience bellcrank assembly problems and irregular function of the elevator system despite being aware of previous bellcrank assembly malfunctions in the Boeing 767;

16.    It further alleged that as a direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the subject Boeing 767 aircraft, said aircraft was caused to deviate from controlled flight and crash into the Atlantic Ocean approximately sixty (60) miles south of Nantucket Island, Massachusetts.

17.    Based on the foregoing allegations, plaintiffs (other than the Mohameds) in the Underlying Case were settling their claims for in excess of one (1) million dollars as a result of competent representation.

18.    The plaintiff, represented by the defendants, lost the opportunity to obtain this result.

19.    At the time of their deaths, the Mohameds left surviving certain heirs and next-of-kin, including Plaintiff, each of whom have sustained substantial pecuniary damages, together with the loss of society, companionship, love and affection, and the loss of services.

20.    Within forty (40) days of the crash, Plaintiff and his family members were approached by EgyptAir representative regarding the crash and to discuss compensation that they were entitled to receive.

21.    At no time, did the representatives of EgyptAir suggest that Plaintiff or his family members should obtain counsel before discussing the receipt of funds from EgyptAir.

22.    EgyptAir represented to Plaintiff and his family members that they were entitled to certain "insurance" funds as a result of the crash.

23.    EgyptAir represented that these funds needed to be taken immediately or potentially lost. EgyptAir did not tell Plaintiff or his family members that that the acceptance of funds would extinguish the possibility of pursuing a lawsuit against EgyptAir.

24.    EgyptAir did not represent any time prior to sending over releases that funds received from EgyptAir were in exchange for a full release by the Plaintiff and his family members from EgyptAir.

25.    Neither the Plaintiff nor his family members understood the payment of funds by EgyptAir to be in exchange for a release of EgyptAir from any future liability.

## FACTS RELEVANT TO PROFESSIONAL NEGLIGENCE

26.    Members or agents of defendant Nolan Law Group went to Egypt in the months following the disaster, in search of victim's families to "sign" them up as clients to sue The Boeing Company and the Parker Hannifin Corporation.

27.    On or around June 9, 2000 a representative of defendant Nolan Law Group contacted the Plaintiff to enter into an agreement for the Nolan Law Group to represent Plaintiff in the claims arising from the EgyptAir Flight 990 air crash.

28.     On or around August 19, 2000 attorneys from the Nolan Law Group entered into an attorney-client relationship with Plaintiff to represent the interests of the heirs of the Mohameds in a wrongful death/survival lawsuit against all parties liable for the air crash. Attached hereto as Exhibit "A" is a true and correct copy of the Retainer Agreement.

29.     Plaintiff retained defendants Donald J. Nolan and the Nolan Law Group to prosecute a wrongful death/survival claim based on the airline crash as set forth above. The Nolan Law Group was told that Plaintiff is a United States Citizen and residing in California.

30.     Plaintiff relied on the Defendants to prosecute its claims against EgyptAir, The Boeing Company and the Parker Hannifin Corporation.

31.     The Defendants, in order to be retained, misled plaintiffs and made representations as to actions that would be taken that they did not intend to complete.

32.     For instance, Defendants represented prior to and at the time Plaintiff was engaged that they would seek to vacate any settlements with EgyptAir. The Defendants, in breach of their fiduciary duty and express representations, did not take any actions to vacate the settlements with EgyptAir.

33.     Further, various correspondence was exchanged between the employees, members and agents of the Nolan Law Group recognizing the Nolan Law Group's representation of Plaintiff and the Nolan Law Group's intention to proceed with a lawsuit against EgyptAir, The Boeing Company and the Parker Hannifin Corporation on Plaintiff's behalf. Donald J. Nolan specifically discussed with Plaintiff and his family members taking action to vacate the alleged settlement entered into with EgyptAir. The Defendants failure to take these actions was also a breach of their fiduciary duty to the plaintiff.

6

34.    Defendants filed a lawsuit in the Eastern District of New York, Brooklyn, in 2000, entitled *In Re Air Crash Off the Cost of Nantucket Island, Massachusetts on October 31, 1999*. Case No: 00-MD-1344 (FB) (KAM) ("Federal Lawsuit"). Attached hereto as Exhibit "B" is a true and correct copy of an Order issued by this Court on December 13, 2007.

35.    Although the Defendants filed the federal lawsuit, they failed to ensure that Plaintiff was appointed as the Personal Representative for the Estate of Aly Rashad Aly Mohamed and the Estate of Baria Zaki Mohamed at the time the Federal Lawsuit was filed.

36.    On March 29, 2010, the Honorable District Judge Cogan of the United States District Court for the Eastern District of New York entered an Order in the Federal Lawsuit dismissing Plaintiff's claims on the basis that Plaintiff lacked capacity to sue as he had not been officially appointed by a court as Special Representative of the Personal Representative for the Estate of Aly Rashad Aly Mohamed and the Estate of Baria Zaki Mohamed. In the dismissal Order, District Judge Cogan's stated "plaintiff is responsible for his attorney's negligent conduct..." Attached hereto as Exhibit "C" is a true and correct copy of the Court's March 29, 2010Memorandum Decision and Order dismissing the Underlying Lawsuit.

## COUNT I - PROFESSIONAL NEGLIGENCE AGAINST NOLAN LAW GROUP

37.    Plaintiff repeats and re-alleges Paragraphs 1-36 in *haec verba*.

38.    As a result of the attorney-client relationship between Plaintiff and Defendant Nolan Law Group, Defendant owed a duty to represent and protect Plaintiff's interests in a diligent and competent manner.

39.    As a result of the attorney-client relationship, Defendant Nolan Law Group was required to act in accordance with the standard of care by providing legal services as reasonably careful attorneys would have under similar conditions.

40.     The Defendant had an obligation to prosecute Plaintiff's case and put Plaintiff in the best position to settle the case for an appropriate amount or present the best possible case at trial.

41.     Notwithstanding its duty, Defendant Nolan Law Group breached its duty and was thus negligent in one or more of the following ways:

  a.    failed to ensure that Plaintiff was appointed as Personal Representative for the Estate of Aly Rashad Aly Mohamed and the Estate of Baria Zaki Mohamed prior to filing the Federal Lawsuit;

  b.    failed to prosecute the case against the named defendants in the Federal Lawsuit, including failing to take discovery and failing to preserve critical evidence;

  d.    failed to give Plaintiff the opportunity to obtain an adequate settlement;

  e.    failed to prepare the case for trial;

  f.    failed to pursue a case against EgyptAir and/or failed to vacate the alleged settlement with EgyptAir;

  h.    rendered legal services which were otherwise performed carelessly or negligently.

42.     As a direct and proximate cause of the Defendant's aforesaid acts and/or omissions described above, the Plaintiff lost the opportunity to obtain an adequate settlement in the case or have the case tried.

43.     Additionally, as a direct and proximate cause of the Defendant's aforesaid acts and/or omissions as described above, the cause of action for wrongful death and survival arising out of the EgyptAir Flight 990 Crash on October 31, 1999 was dismissed on March 29, 2010 and Plaintiff has suffered damages of a personal and pecuniary nature as a result of the inability to obtain compensation for same.

*WHEREFORE*, Plaintiff, MOATAZ MOHAMED, Individually and as Personal Representative of the Estates of ALY RASHAD ALY MOHAMED and BARIA ZAKI MOHAMED, deceased, respectfully prays that this Honorable Court enter a Judgment against the Defendant, NOLAN LAW GROUP and in Plaintiff's favor in an amount to be determined at trial, but in any event, believed to be in excess of one hundred-fifty thousand dollars ($150,000), punitive damages and the cost of this suit.

## COUNT II- PROFESSIONAL NEGLIGENCE AGAINST DONALD J. NOLAN

44.     Plaintiff repeats and re-alleges Paragraphs 1-43 in *haec verba*.

45.     As a result of the attorney-client relationship between Moataz Mohamed and Defendant Donald J. Nolan, the Defendant owed a duty to represent and protect Mr. Mohamed's interests in a diligent and competent manner.

46.     As a result of the attorney-client relationship, the Defendant Donald J. Nolan was required to act in accordance with the standard of care by providing legal services as a reasonably careful attorney would have under similar conditions.

47.     The Defendant had an obligation to prosecute Plaintiff's case and put Plaintiff in the best position to settle the case for an appropriate amount or present the best possible case at trial.

48.     Notwithstanding his duty, Defendant Donald J. Nolan breached his duty and was negligent in one or more of the following ways:

        a.     failed to ensure that Plaintiff was appointed as Personal Representative for the Estate of Aly Rashad Aly Mohamed and the Estate of Baria Zaki Mohamed prior to filing the Federal Lawsuit;

        b.     failed to prosecute the case against the named defendants in the Federal Lawsuit, including failing to take discovery and failing to preserve critical evidence;

    d.      failed to give Plaintiff the opportunity to obtain an adequate settlement;

    e.      failed to prepare the case for trial;

    f.      failed to pursue a case against EgyptAir and/or failed to vacate the alleged settlement with EgyptAir;

    h.      rendered legal services which were otherwise performed carelessly or negligently.

49.    As a direct and proximate cause of the Defendant's aforesaid acts and/or omissions described above, the Plaintiff lost the opportunity to obtain an adequate settlement in the case or have the case tried.

50.    Additionally, as a direct and proximate cause of the Defendant's aforesaid acts and/or omissions described above, the cause of action for wrongful death and survival arising out of the EgyptAir Flight 990 Crash on October 31, 1999 was dismissed on March 29, 2010 and Plaintiff has suffered damages of a personal and pecuniary nature as a result of the inability to obtain compensation for same.

**WHEREFORE**, Plaintiff, MOATAZ MOHAMED, Individually and as Personal Representative of the Estates of ALY RASHAD ALY MOHAMED and BARIA ZAKI MOHAMED, deceased, respectfully prays that this Honorable Court enter a Judgment against the Defendant, DONALD J. NOLAN and in Plaintiff's favor in an amount to be determined at trial, but in any event, believed to be in excess of one-hundred-fifty thousand dollars ($150,000), punitive damages and the cost of this suit.

Dated: New York, New York
       June 22, 2012

Respectfully submitted,
WASSER & RUSS, LLP

By:_____
Adam H. Russ (EDNY # AR2590)
Isaac Alony (EDNY# IA          )
80 Maiden Lane, Suite 1502
New York, NY 10038
Tel:    (212) 430-6040
Fax:    (212) 430-6041

*Attorneys for Plaintiff*

Of Counsel:

KONICEK & DILLON, P.C.

Daniel F. Konicek, Esq.

Amir R. Tahmassebi, Esq.

70 W. Madison Suite 2060

Chicago, IL 60602

# EXHIBIT A

# NOLAN LAW GROUP

January 5, 2001



Mr. Neil Melchienat
*BEAUMONT. J&D SON*
Lloyds Chambers
1 Portsoken Street
London E1 8AW
ENGLAND

<u>NOTICE OF ATTORNEY'S LIEN</u>

RE:    EgyptAir Flight #-990
Decedents: Ali Rashed Ali Mohamed Saad and
Baria Zaki Mohamed Ahmed
Our File Number: 00055

Dear Mr. McGlichrie:

Please be advised that Nolan Law Group has been retained by the next-of-kin of Ali Rashed Ali Mohamed Saad, deceased, and Baria Zaki Mohamed Ahmed, deceased (hereinafter "clients") to prosecute or settle any claims for damages against parties responsible for the injuries to and death of said decedents arising from the crash of EgyptAir Flight 990 on October 31, 1999.

You are hereby notified that the clients entered into a contract with me to pay as compensation for services rendered and to be rendered in and about the prosecution of the said suit, claim, demand or cause of action an agreed-upon percentage of the sum of any amount recovered by way of settlement or otherwise.

You are further notified that I claim a lien to the extent of my interest, as above set forth in said claim, demand, cause of action and suit at law. Said lien shall attach to any verdict, or judgment, entered or to be entered in such suit, or to any money or property which may be recovered by the clients on account of such claim, suit, demand or cause of action from and after the service of this Notice.

Please also do not communicate directly with my clients.

Very truly yours,

NOLAN LAW GROUP



Donald J. Nolan

STATE OF ILLINOIS  )
                   )   SS.
COUNTY OF COOK     )



I hereby certify that the above and foregoing Notice of Attorney's Lien was served upon the addressee by placing said notice with Federal Express Overnight Delivery on January 5, 2004, with the fee for delivery fully prepaid and proof of delivery request.

_____
            Paula L. Jett

Subscribed and Sworn to before me
this 5th day of January, 2004.

_____
         NOTARY PUBLIC

## ADDENDUM TO ATTORNEY-CLIENT AGREEMENT



Moataz Ali Mohamed, Ghada Ali Mohamed and Dhalia Ali Mohamed
(hereinafter "clients"), as an addendum to, and constituting a part of the attorney-client
agreement between clients and Nolan Law Group, hereby agree, for lawful
consideration, that any and all payments made to clients by or on behalf of EgyptAir,
Inc., The Boeing Company or any other party responsible for the air crash of EgyptAir
Flight 990 and arising from the crash of said flight and the resulting deaths of Ali
Rashad Ali Mohamed Suad and Baria Zaki Mohamed Ahmed, whether made by way
of judgment, settlement or otherwise, and whether paid in the United States, Egypt or
any other jurisdiction, shall be distributed pursuant to Islamic Inheritance Laws so that
Moataz Ali Mohamed, as the son of said decedents, shall receive fifty percent (50%)
of any such payment, and Ghada Ali Mohamed and Dhalia Ali Mohamed, as the
daughters of said decedents, shall receive twenty-five percent (25%) each of any such
payment.

Moataz Ali Mohamed

Ghada Ali Mohamed

Dhalia Ali Mohamed

Dated: _____ , 2001.

## ملحق للاتفاق بين المحامي وموكليه

بموجب هذه الوثيقة، والتي هي ملحق وجزء لا يتجزأ من الاتفاق المبرم بين الموكلين: معتز علي محمد، وعادة علي محمد، وداليا علي محمد (ويشار إليهم هنا بعد بـ "الموكلين") ومجموعة نولان للمحاماة، يوافق الموكلون بسبب الاعتبارات القانونية على أن أية مبالغ تدفع للموكلين بواسطة أو بالنيابة عن شركة مصر للطيران أو شركة بويغ للطيران أو أي طرف آخر مسؤول عن انهيار وتحطم طائرة مصر للطيران، رحلة رقم ٩٩٠، وناشئة (أي

المبالغ المذكورة) عن انهيار وتحطم الطائرة المذكورة وما نتج عنها من موت كل من المرحوم علي رشاد على محمد سعد والمرحومة برية زكي محمد أحمد، سواء كان الدفع هو على سبيل الإنصاف القضائي أو التسوية الودية أو ما خالف ذلك، وسواء كان الدفع داخل الولايات المتحدة أو مصر أو أية ولاية قضائية أخرى يتم توزيعها (أي المبالغ المذكورة) بموجب أحكام الإرث في الشريعة الإسلامية بحيث يتسلم معتز علي محمد، باعتباره ابن المتوفيين المذكورين، نسبة خمسين بالمائة (%٥٠) من المبالغ المذكورة، بينما تتسلم

عادة علي محمد وداليا علي محمد، باعتبارهما ابنتي المتوفيين المذكورين، نسبة خمسة وعشرين بالمائة (%٢٥) لكل منهما من المبالغ المذكورة.

_____
معتز علي محمد

_____
عادة علي محمد

_____
داليا علي محمد

حرر في تاريخ: _____ ٢٠٠٣.

بسم الله الرحمن الرحيم

**عقــد وكالــة واتفـــاق**

إنه في يوم المـوافق / / ٢٠٠٠

بين كل من :

**أولا** : الســادة / مجموعـة نــولان القانونية – ويمثلها السيد / دونك نولان العنوان ٢٠ ش نورث كلارك – شيكاغو – 60602 – الولايات المتحدة الأمريكية .

**ثانياً** : السادة / كلاري ولي ٢ ش روستر – نوميا – كوينز نيانك – 4350 – استرالياً .

**ثالثـا** : السيد فكري حسن الديب المحامي نعنوان عمارة ٢/٤ ش الدكتور أنور المعطي – المنطقة الأولى – مدينة نصر – القاهرة

**(طرف أول – الوكيل)**

ثانياً : السادة /

ورثة المرحوم /

العنوان /

**(طرف ثاني – الموكل)**

وقد تم الاتفاق والتراضي بين الطرفين على ما هو آت :

**البند الأول**

وكل الطرف الثاني (الموكل) الطرف الأول (الوكيل) في اتخاذ كافة الإجراءات وتقديم الشكاوى والطلبات نحو وتعويض الطرف الثاني عن الخسر والأضرار المادية والأدبية والتعويضات عند أي جهة يثبت إدانتها خطأها ومسئوليتها وذلك أمام المحاكم على اختلاف أنوعها وأمام .....

أنواعهــا وترجتها ضد اى جهه مسؤولة بحادث طائرة تطير الرحله رقم 990 التى وقعت يوم 1999/10/31 .

## البند الثانى

يقوم الطرف الأول بمباشرة هذه الأعمال الموكول إليه القيام بها على خير وجه بقصد تحقيق مصلحة الطرف الثانى ويتحمل جميع النفقات والمصاريف الخاصة بمباشرة هذا العمل كــاملاً حتـى وصـــول الطرف الثانى على التعويض دون تحمل الأخير شئ منها (الطرف الثانى) وهذه النفقات التى يتحمل بها الطرف الأول وحدها وهى :

١. نفقات تقديمه للأوراق والطلبات والشكاوى .... الخ .

٢. نفقات إقامته لدعاوى أمام المحاكم على اختلاف أنواعها ودرجاتها واستئناف الأحكام والسير فيها ولو كان الاستئناف للأحكام من الخصوم أو احدهم له .

٣. نفقات انتقالات هيئة الدفاع التابعة له ومن يعانوه فى موضوع هذه القضية أو من يرى الاستعانة به حالاً أو مستقبلاً .

٤. نفقــات المكاتبـات والاتصالات والفاكسات والأوراق التى تى رسلها وغير ذلك من الأوراق التى ترسل لاحدهما من الطرف الثانى او اى ـ على استفسار نسه أو غير ذلك .

٥. النفقات والمصـــروفات المتعلقة بسفر وإقامة الطرف الثانى إلى جهات التحقيق أو القضاء حال طلب الجهات لزوم حضوره أمامه دنى حضوره (الطرف الثانى) لاستلام حقوقه .

٦. نفقات سفر وإقامة الطرف الثانى بأمريكا وانتقالاته ومأكله ومشربه حتى عودته حال متابعته لموضوع النزاع .

٧. نفقات استخراج الأوراق والمستندات التى يطلبها الطرف الأول من الطرف الثانى .

## البند الثالث

يلتزم الطرف الأول في مباشرته للعمل الموكول إليه من الطرف الثاني حتى الانتهاء منه ببذل العناية الفائقة وليس ملزماً بتحقيق نتيجة .

## البند الرابع

يستحق الطرف الأول مقابل ما يقوم به من جهود كبيرة في مباشرته لموضوع التعاقد ومـــا يتفقه من نفقات ومصروفات ...الخ في سبيل هذا العمل ويحصل على أتعابٍ شاملة لكل ذلـك هـــي نسبة قدرها ٣٠% من قيمة التعويض الذي يستحق الطرف الثاني وهذه النسبة يستحقها في الحالات الآتية :

١. تسوية أو إنهاء النزاع قبل رفع القضية باستحقاق تعويض للطرف الثاني .

٢. تسوية أو إنهاء النزاع بعد رفع القضية باستحقاق تعويض للطرف الثاني .

٣. تسوية أو إنهاء النزاع بعد صدور حكم ابتدائي وقبل الاستئناف .

٤. تسوية أو إنهاء النزاع بعد الاستئناف وقبل صدور الحكم باستحقاق التعويض للطرف الثاني .

٥. عند صدور حكم الاستئناف وضرورة الحكم نهائي .

## البند الخامس

يحق للطرف الأول تحديد نسبة لمتفق عليها بعد العقد دون المساس بنسبة الـ ٧٠% التي هي حق الطرف الثاني حتى يحدد الطرف الثاني كيفية استلامه أو قبضه لها وإلا بحق للطرف الأول قبض أو استلام التعويض المحكوم به لصالح الطرف الثاني اتفاقا أو قضاءً .

## البند السادس

يستلزم الوكيل بعدم القيام بأي إجراء أو اتفاق في موضوع القضية يغير الرجوع إلى الطـــرف الثاني وموافقته كتابة - و لا يخل ذلك بحق الطرف الأول بصفته وكيلاً مفوضاً عن

الطرف الثاني في تقديم كافة الشكاوى والطلبات والالتماسات بعينيتها ولعائيها أمام أي جهة
أيـا كـانت أو أمام المحكمة متى كانت لمصلحة الطرف الثاني في سبيل حصوله على اكبر
تعويــض ممكن وذه في سبيل ذلك إعداد الملفات وتحضيرها بكل الوسائل القانونية المشروعة
والمـرافعات والمذكـرات والتفويضات وغير ذلك من أوراق وذه سبيل ذلك الحق في تمثيل
الطـرف الـثاني في التفاوض بكل ثقة وقوة في بعض أو كل المنازعات والمفاوضات التي
تخص موضوع هذا الاتفاق .

## البند السابع

لأهمـــة الدور الذي يقوم به الطرف الأول (الوكيل) وانفاذه في موضوع هذا الاتفاق
كما هو موضح بالبنود السابقة لا يجوز للطرف الثاني إلغاء وكالته للطرف الأول بغير سبب
قـانوني واقعـي ثابت من شأنه أن يشكل خطراً جسيماً وضـرراً على مصالح وحقوق الطرف
الـثاني - وإلا تحمـل الطرف ثاني بجميع لمصروفات والنفقات التي أنفقها الطرف الأول
وتعويضته عما أصابه من ضرر .

وكذلك لا يجوز للطرف الأول هو الآخر التنازل أو التخلي عن وكالة الطرف الثاني
لــه بأي حالة من الأحوال بغير سبب ومبرر قانوني وواقعي ثابت من قبل الطرف الثاني من
شأنه أن يشكل خطراً جسيماً وضرراً على مصالح وحقوق الطرف الأول .

## البند الثامن

يـلتزم الطرف الثاني بعمل توكيل لمحامي للطرف الأول لمباشرة الـعمل موضوع هذا
الاتفــاق – ويعطي فيه للطرف الأول حق إشراك أو توكيل الغير هو كل أو بعض ما يتصل
بموضــوع التعاقد بشرط عدم تحمل الطرف الثاني بأي مبالغ على الإطلاق عن ذلك ويكون
التوكيل خالياً من الصلح وفض أو استلام أو صرف التعويض لحامي الطرف الثاني .

## البند التاسع

بخضــوع هـذا الاتفاق والتعاقد والوكالة الواردة به للقوانين في ولاية اليلنوس وكذلك
الحقوق والواجبات الخاصة بتوكيل والموكل متى كانت لا تتعارض مع بنود هذا الاتفاق .

*التوقيع*

## البند العاشر

فـي حالـة قيـام جانب أو جدل حول هذا العقد أو تعبير عنه من بنوده بان يلجأ إلى التحكيم القضائي المعمول به تبعا لمنظمة التحكيم الأمريكي .

عـلـي انـــه يكون انتقال الطرف الثاني لأجل ذلك وإقامة وسكناه وستربيه حتى إنهاء التحكيم على نفقة الطرف الأول .

## البند الحادي عشر

فـي حالة عند نجاح الطرف الأول في الحصول على حكم بالتعويض لصالح الطرف الثاني أيـما كانت الأسباب لا يجوز الرجوع على الطرف الثاني بأي حال من الأحوال بأي نفقات أو أتعاب أو مصروفات أنفقها في سبيل ذلك .

## البند الثاني عشر

هذا الاتفاق والتعاقد بين الطرفين هو المعمول به وأي اتفاق شفهي بخلاف ذلك لا يعتد به .

## البند الثالث عشر

تحرر هذا الاتفاق من نسختين باللغة العربية وقد ربطت نسخ جميعها بتوقيع الطرفين بتعيينانه كل نسخة عليها وإقرارء .

| الطرف الأول | الطرف الثاني |
|---|---|
| عن / مجموعة نولان القانونية | ح المب سي بشا وإصلاح |
| السيد / وونالدر نولانك | غادة على رشادعلى |
| عند ما تشترحمه / تكون إدخال. عب. | |
| السيد / كلارى دنير | |
| السيد / فكرى حسن الدبس | |
| كسب اد پر ل | |

# EXHIBIT B

ORIGINAL
Orr
4/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

IN RE AIR CRASH OFF THE COST OF         Case No. 00-MD-1344 (FB) (KAM)
NANTUCKET ISLAND, MASSACHUSETTS ON
OCTOBER 31, 1999                        **ORDER**

------------------------------------------------------------x

WHEREAS this matter arises from the crash of Egypt Air flight 990 on October 31, 1999;

WHEREAS from May 29 through June 3, 2007, at Egypt's Court of Cassassion, historic settlement proceedings were held in Cairo, Egypt ("the prior proceedings") in which Dr. Yassin El-Ayouty presided as Special Master under the supervision of this Court;

WHEREAS in the prior proceedings, plaintiffs were given a choice between accepting a $125,000 settlement, with $25,000 of the proceedings paid to plaintiffs' counsel as attorney's fees ("Option 1") or presenting their damage claims to Dr. El-Ayouty for an award of between $100,000 and $225,000, out of which plaintiff would be required to pay $25,000 in attorney's fees ("Option 2");

WHEREAS five cases were resolved with Option 1 and nine cases were resolved by Option 2;

WHEREAS participation of more plaintiffs in the prior proceedings was thwarted by non-litigation interests;

WHEREAS cases arising from the deaths of the following twenty-eight individuals remain pending before the Court ("the remaining cases"): Aly Rashad Aly

Mohamed, Baria Zaki Mohamed, Ragab Mohamed Abdelbaky, Magdy Mahmoud Mohamed, Mostafa Lofty Mohamed, Sherif Fathy Tawfeek, Khaled Mohamed Elsam, Nehad Ahmed Wasfy, Yasser Mohamed Kamal, Gama Mohamed Emara, Mohamed Mahmoud Mohamed El Sayed, Ashraf Fouad Mohamed El-Mansy, Tamer Ibrahim Kassem, Hesham Sabry El Awady, Jihan El Shoura, Salah Mohamed El Sahban, Mohamed Galal Abd El Maksoud, Kalid El Sayed Aboelsoud, Samir Mahmoud Aboul Enein Shaaban, Ehab Mohamed Nabil Hussein Salama, Diaa El-Din Hosny Hussein, Jeanette Fam Sadek Tadros, Maha Aly Mokhtar El Mahrouky, Khalifa Gahri Hassenin, Mahmoud Abd-Elazym Laz, Adel Maher Hassan, Hosam El Din Ghafar, and Gihad Hossameldin;

WHEREAS plaintiffs in the remaining cases are citizens and residents of Egypt;

WHEREAS settlement funds for plaintiffs that participated in the prior proceedings have been distributed;

WHEREAS payment of settlement funds has created interest among plaintiffs in the remaining cases in mediating their claims in a manner similar to the prior proceedings;

NOW, THEREFORE, the Court orders as follows:

1. On or before February 14, 2008, plaintiffs' counsel will produce by written notice to all parties and the Court the names of plaintiffs that wish to participate in further settlement proceedings, specifying which plaintiffs select Option 1 and which select Option 2 to resolve their claims.

2

2. Plaintiffs choosing Option 1 shall have their cases be processed and paid with the exchange and filing of the notices, releases, and court approvals utilized previously.

3. Plaintiffs choosing Option 2 must execute the attached Option Selection Form, stating that they elect to resolve their claims before Dr. El-Ayouty. The executed Option Selection Form must be filed with the Court as an enclosure to a signed copy of the attached letter on or before February 14, 2008.

4. A second round of binding mediation in Cairo, Egypt will only be held if plaintiffs in twelve or more of the remaining cases choose Option 2 and satisfy the above requirements. In the event that this level of participation is not achieved, a scheduling conference to set a discovery schedule will be held before the magistrate judge on or before March 14, 2008. Plaintiffs selecting Option 1 will be unaffected by the level of participation in Option 2.

5. If the requisite number of plaintiffs in the remaining cases select Option 2, Dr. El-Ayouty will serve as Special Master and preside over the proceedings which, shall be scheduled as soon as practicable after February 14, 2008. Dr. El-Ayouty will issue awards based upon presentations made at the sessions. Each case shall attempt to make its presentation in no more than one hour; plaintiffs will be assisted by their counsel in making their presentations. All testimony and written materials will be limited to the issue of damages and will not be under oath, or in any way transcribed or recorded. After completion of the proceedings, Dr. El-Ayouty shall issue formal awards as soon as

3

practicable, subject to a final order being entered by the Court; all arrangements and agreements between the parties concerning releases, orders of dismissal, court approvals, and limitations on attorneys' fees and costs will remain the same as used in the prior proceedings.

6. The costs associated with the proceedings shall be equally split in the same manner as the prior proceedings.

7. In the event that the requisite number of plaintiffs select Option 2, any individual plaintiff who gives notice prior to February 14, 2008 that he or she wishes to select Option 2, but fails to participate in proceedings before Dr. El-Ayouty will have their case dismissed with prejudice for failure to prosecute.

    SO ORDERED

                                    FREDERIC BLOCK
                                    Senior United States District Judge

Brooklyn, New York
December 13, 2007

4

Case 1:00-md-01344-FB-KAM    Document 451-2    Filed 12/14/2007    Page 1 of 1

Date: _____

The Honorable Frederic Block
Senior United States District Judge
United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:        *In re: Air Crash Disaster off the Coast of Nantucket Island,*
           *Massachusetts on October 31, 1999,* 00-MDL-1344 (FB) (KM)

Dear Judge Block:

        I write to request that I be allowed to participate in a second round of
binding settlement proceedings in Cairo, Egypt before Special Master Dr. Yassim El-
Ayouty. I understand that this request imposes a burden upon Your Honor and Dr. El-
Ayouty because you previously made yourself and Dr. El-Ayouty available in Cairo,
Egypt from May 29 through June 3, 2007; I apologize for not participating in the prior
proceedings and for belatedly asking Your Honor for a second chance.

        I assure Your Honor that I approach this opportunity in good faith and
will adhere to the procedures explained to me by my attorney. A signed Option
Selection Form indicating that I elect to resolve my claims through the proceedings
before Dr. El-Ayouty is enclosed. I understand that, due to the burden imposed on
Your Honor and Dr. El-Ayouty, a second round of proceedings will only be held if
plaintiffs in twelve or more cases ask to participate; in the event that this level of
interest is reached and I ultimately fail to participate, such failure will result in
dismissal of my case with prejudice.

        I hope Your Honor grants me the opportunity to share with Dr. El-Ayouty
the loss I have suffered as a result of this tragic accident.

                Sincerely,

                _____

Enclosure

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                        :
                                                        :      **MEMORANDUM**
IN RE: AIR CRASH DISASTER OFF THE            :      **DECISION AND ORDER**
COAST OF NANTUCKET ISLAND,                   :
MASSACHUSETTS ON OCTOBER 31, 1999  :      MD-00-1344 (BMC)
                                                        :
                                                        :
---------------------------------------------------------- X

**COGAN**, District Judge.

This case is before me on four motions: [614] defendants Egypt Air, The Boeing

Company ("Boeing"), and Parker Hannifin Corporation's ("Parker Hannifin") motion to enforce

agreements to dismiss claims made by plaintiffs in *Dmitri* Case Nos. 2, 6, 7, and 8 and *Habashy*

Case Nos. 4 and 5;[1] [617] defendants Boeing and Parker Hannifin's motion to dismiss plaintiff

Moataz Mohamed's claims for lack of capacity to sue; [620] defendants Boeing and Parker

Hannifin's motion to dismiss for failure to prosecute all claims made by plaintiffs in Case Nos. 8,

10, 13, 21, 28, 33, 38, and 40 of the *Mohamed* complaint; and [621] defendants Boeing and

Parker Hannifan's motion to dismiss for failure to prosecute all claims made by plaintiffs in

*Dmitri* Case Nos. 2, 6, 7, 8, and 12 and *Habashy* Case Nos. 4 and 5. For the reasons that follow,

the four motions are GRANTED.

## BACKGROUND

This litigation, now ten years old, arises out of the crash of EgyptAir Flight No. 990 on

October 31, 1999 in the Atlantic Ocean approximately sixty miles from Nantucket Island; no one

survived. Numerous lawsuits were commenced against EgyptAir, Boeing and Parker Hannifin,

both in the United States and in Egypt by the families of the decedents. Among them was El-

---

[1] The case numbers, as designated by defendants, correspond to the order in which the plaintiffs and their decedents
appear in the caption of the complaint.

Habashy, et al. v. The Boeing Company, et al., No. 00-cv-7160 (E.D.N.Y. 2000), originally filed

in the Superior Court of California, Los Angeles (hereinafter "*Habashy*"); Dmitri, et al v. The

Boeing Company, et al., No. 01-cv-1885 (E.D.N.Y. 2001), originally filed in the Superior Court

of California, Alameda County and then removed to the United States District Court for the

District of California (hereinafter "*Dmitri*"); and Moataz Mohamed, et al. v. The Boeing

Company, et al., No. 02-cv-1530 (E.D.N.Y. 2002), originally filed in the Southern District of

New York and then transferred to the Eastern District (hereinafter "*Mohamed*"). The *Habashy*

case combines the claims of five families whose decedents perished in the October 1999 crash

and the *Dmitri* suit asserts claims on behalf of the same five families as *Habashy* and adds as

plaintiffs the families of nine other decedents who died in the crash. Plaintiff Moataz Mohamed

asserts claims for the death of his parents, Aly Rashad Aly Mohamed and Baria Zaki Mohamed,

in the *Mohammed* case.

## DISCUSSION

### I.    Motion to Enforce Agreements to Dismiss

In 2003, the families of twelve of the decedents in *Dmitri* and *Habashy*, upon the advice

of counsel, agreed to dismiss all claims pending in the United States in exchange for payment.[2]

Specifically, four separate settlement agreements executed by these plaintiffs (corresponding to

four different decedents) provided that they would "dismiss with prejudice, our claims pending

in the United States" arising out of the crash but would "not waive such rights as they may have

---

[2] The following plaintiffs signed settlement agreements: plaintiffs Hala Mohamed Attia Mohamed Mamoud,
Mahroussa Abdel Fatah Mohamed El-Beshbishy, Takek Anwar Hosny Ibrahim, Hisham Anwar Hosny Ibrahim and
Marwa Anwar Hosny Ibrahim, individually and as successors in interest to the rights of decedent Adel Anwar
Hosny Ibrahim; plaintiffs Sherif Samyayad Masoud, Mona Samy Ayad Masoud and Narges Iskander Gad,
individually and as successors in interest to the rights of decedent Raafat Samy Ayad Masoud; plaintiff Hoda Farouk
El-Shawarbi, individually, as guardian ad litem for Mohamed Hisham Ahmed Aly Omar and Mostafa Hisham
Ahmed Aly Omar, and as successors in interest to the rights of decedent Captain Hesham Omar; and Hesham
Ibrahim Ahmed El-Sherbiny, individually, as guardian ad litem for Taghda Hesham Ibrahim Ahmed El-Sherbiny,
and as successors in interest to the rights of decedent Maha El-Mahrouky.

to pursue legal action against Boeing and/or Parker Hannifin in Egypt." The agreements further
stated that the plaintiffs "received the advice of U.S. Legal Counsel of our choice on the effect of
this agreement and understand that by signing this document we waive and renounce all legal
remedies which may be available to us anywhere in the world arising out of this Accident, save
such remedies that may be available to us in Egypt."

Each of the agreements set forth the amount of money to be paid in attorneys' fees, with
the balance to be paid directly to the plaintiffs. They were all signed in Cairo, Egypt at the
offices of EgyptAir's counsel. After execution, the money was wired to counsel and to the
plaintiffs. Plaintiffs accepted and retained the consideration paid to them. To date, however,
they have refused to dismiss the claims. In a previously filed letter to Magistrate Judge Levy,
defendants indicated that stipulations of dismissal were never filed because the parties were
unable to agree on the exact wording of the stipulations. Defendants Boeing and Parker
Hannifan now move to enforce the settlement agreements and dismiss the cases.

A "district court has the power to enforce, summarily on motion, a settlement agreement
reached in a case that was pending before it." Meetings & Exposition, Inc. v. Tandy Corp., 490
F.2d 714, 717 (2d Cir. 1974). Settlement agreements are contracts, interpreted according to
general principles of contract law; once entered into, the contract is binding and conclusive.
Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). An unambiguous settlement agreement
will be construed according to its terms. Suarez v. Ward, 896 F.2d 28, 30-31 (2d Cir. 1990);
Cusano v. Horipro Entm't Group, 301 F. Supp. 2d 272, 277 (S.D.NY. 2004) ("When the terms of
a contract are clear, the secret or subjective intent of the parties is irrelevant.") (internal citations
omitted). And settlements are not lightly cast aside. Willgerodt v. Hohri, 953 F. Supp. 557, 560
(S.D.N.Y. 1997). When a party makes a deliberate, strategic choice to settle, a court cannot

Page 3 of 21

relieve him of that choice simply because his assessment of the consequences was incorrect. United States v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994). An afterthought or change of mind is not sufficient to justify rejecting a written settlement agreement. Willgerodt, 953 F. Supp at 560. Where the language used in the signed release or settlement is clear and unambiguous, summary enforcement is appropriate. Omega Eng'g v. Omega, S.A., 432 F.3d 437, 444 (2d Cir. 2005) ("A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are clear and unambiguous.").

The executed settlement agreements, translated into Arabic, are clear and unambiguous; their plain language dictates that in exchange for an agreed upon sum of money, plaintiffs are to dismiss their claims pending in the United States arising out of the EgyptAir crash with prejudice. Plaintiffs do not contest the meaning of the terms of the agreements or dispute their authenticity. Nor do they claim that the agreements were the product of fraud, coercion, mistake, duress or any other ground typically asserted to invalidate a settlement. Instead, in a numbered submission devoid of any legal authority, plaintiffs make the following five points: (1) defendants failed to provide "Certificates of Acknowledgement of Execution of an Instrument"; (2) the settlement amounts have been redacted on the agreements; (3) plaintiffs were not "under the impression" that their cases were settled as evidenced by the letters submitted to the Court in January 2008 and January of 2009; (4) families of other victims received similar payments without dismissing their cases; and (5) no evidence of full and final payments has been shown. I address each of these contentions, none of which have any merit, in turn.

Plaintiffs' intimation that the agreements are invalid because they did not contain Certificates of Acknowledgment is wrong. I am aware of no authority, and plaintiffs have not pointed to any, that makes a Certificate of Acknowledgement of Execution an indispensable

Page 4 of 21

document for the enforcement of a fully executed settlement agreement. Under New York law, Certificates of Acknowledgment are used, mostly with real property deeds, to prove the due execution of an agreement. In that context, the existence of a Certificate of Acknowledgment by a notary public gives rise to a presumption of due execution that can only be rebutted upon "a showing of clear and convincing evidence to the contrary." Spilky v. Bernard H. La Lone, Jr. P.C., 227 A.D.2d 741, 742, 641 N.Y.S. 2d 916 (3rd Dept. 1996). Plaintiffs have not even asserted, let alone proven, that the signatures on the settlement agreements are not their signatures. I have no reason to question the authenticity of the settlement agreements and do not need a Certificate of Acknowledgment to enforce them. See e.g., Britto v. Salius, No. 08-cv-5833, 2010 WL 93108, at *1 (2d Cir. Jan. 12, 2010) (rejecting plaintiff's assertion that the settlement agreement was incomplete because plaintiff did not sign a general release form and did not formally move for voluntary dismissal of the case).

In a similar vein, plaintiffs argue that no evidence of final payment has been shown. Plaintiffs do not maintain, by affidavit or otherwise, that final payment has not been *made*, however. Indeed, defendants in their reply submission attach the actual written confirmations of payment. The confirmations serve both to defeat plaintiffs' challenge and to undermine any suggestion that the plaintiffs did not agree in 2003 to the settlement amount. New York courts recognize that the strongest indication that a party has assented to settlement is when, as here, that party accepts the benefits of the settlement without reservation. Palumbo v. Norstar Bank Upstate N.Y., 212 A.D.2d 377, 622 N.Y.S.2d 263 (1st Dept. 1995) (settlement agreement enforced where the agreement was fully performed and plaintiffs accepted its benefits). Like the assertion concerning the lack of a Certificate of Acknowledgment, plaintiffs' belated attempt to attack the technical sufficiency of the agreements is unavailing.

Next, plaintiffs point to the two letters submitted to the Court in January of 2008 and

2009 as evidence that they were never under the impression that that their cases had settled. The

argument suffers from at least one fundamental flaw; all but two of the plaintiffs who signed the

letters are plaintiffs in cases not presently before the Court on this motion to enforce the

settlements. The letters thus have extremely limited probative value. With respect to the two

plaintiffs who signed the 2003 agreements and the January 2009 letter, the letter states:

> Plaintiffs who signed a temporary plain paper as a token of consenting to any settlement,
> later on and after consulting with a legal counsel had duly informed the insurance
> companies of their final disposition of refusal and rejection of their offers!! Hope the full
> picture is clear now.

The full picture is clear from the settlement agreements. Plaintiffs agreed, upon the

advice of counsel, to settle their claims. Plaintiffs' assertion years later that they were not "under

the impression" that their claims were settled is of no consequence and cannot change the

unequivocal language of the agreements. Since the terms of the settlement are clear, the parties'

subjective intent is irrelevant. A party who executes a contract is presumed to know and

understand its contents and to assent to them. Choung v. Allstate Ins. Co., 283 A.D.2d 468, 724

N.Y.S.2d 882 (2d Dept. 2001). Plaintiffs' apparent change of heart and alleged confusion are

insufficient to invalidate these agreements. See Willgerodt v. Hohri, 953 F. Supp. 557, 560

(S.D.N.Y. 1997); Lee v. Boro Realty, 39 A.D.3d 715, 832 N.Y.S.2d 453 (2d Dept. 2007)

(plaintiff's conclusory and unsubstantiated claim that she intended her medical release to mean

something other than the unambiguous stated meaning of the release insufficient to void the

release).

Nor am I persuaded by plaintiffs' conclusory assertion that "[f]rom best information and

belief, all families of the victims received similar payments in 2000 and signed similar

Agreements without dismissing their cases." Those agreements are not before me on this motion and I see no reason to consider them.

Finally, plaintiffs' passing mention that the settlement amounts are redacted has no merit. If the Court were charged with assessing the fairness, rather than the enforceability of these settlements, the redactions would be troubling. But when a case is settled as a result of a private agreement between the parties, the court "normally plays no role whatever, standing indifferent to the terms the parties have agreed to." Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986). Plaintiffs have not suggested that they were unaware of the amounts at the time the agreements were executed or that defendants never provided unredacted copies. Indeed, defendants aver that "had such a request been made, Defendants' counsel would certainly provide Plaintiffs' new counsel with unredacted copies of the 2003 Agreements." That the copies submitted to the Court have redacted settlement amounts and redacted identifying information hardly supports invalidating the settlement agreements.

For these reasons, the claims covered by the 2003 agreements are dismissed.[3]

II.     Motion to Dismiss Mohamed Claims

Mohamed, et al. v. Boeing Co. et al., 02-cv-1787 (E.D.N.Y. 2002), was filed initially in the Southern District of New York on October 30, 2001 by plaintiff Moataz Mohamed "individually and as personal representative" of the estates of his parents, Aly Rashad Aly Mohamed and Baria Zaki Mohamed, who perished in the crash. Defendants move to dismiss plaintiff Mohamed's claims, arguing that he lacks capacity to sue.

Defendants' position is fairly straightforward. They assert that the Death on the High Seas Act ("DOHSA") governs this dispute; that under the DOHSA, only a court-appointed

---

[3] The dismissal of the claims subject to the 2003 settlement agreements leaves only one claim in the *Dmitri* and *Habashy* cases: Case No. 12 in the *Dimitri* action.

personal representative of the deceased may bring suit for wrongful death; and that plaintiff Mohamed, who only became a personal representative of his deceased parents' estate almost seven years after the limitations period expired, lacks the capacity to sue. I agree with defendants. Plaintiff Mohamed's DOHSA claims are dismissed.

Where, as here, an airplane crash occurs on the high seas, DOHSA supplies the substantive United States law.[4] Zicherman v. Korean Air Lines Co., 516 U.S. 217, 116 S. Ct. 629 (1996). DOHSA provides that,

> [W]henever the death of a person shall be caused by wrongful act, neglect or default occurring on the high seas beyond a marine league from the shore of any state…the personal representative of the decedent may maintain a suit for damages in the districts courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child or dependant relative against the vessel person, or corporation which would have been liable if death had not ensued.

45 U.S.C. § 761.

A "personal representative of the decedent must be a person empowered by law to administer the decedent's estate." See Complaint of Cosmopolitan Shipping, Co., 453 F. Supp. 265, 266 (S.D.N.Y. 1978) ("The term personal representative requires some designation by a court that the individual seeking to prosecute the wrongful death action is an administrator of the decedent's estate.") Only the personal representative has a cause of action under DOHSA, not the beneficiaries named in the statute or any other beneficiary of the decedent's estate. Cruz v. Korean Air Lines Co., 838 F. Supp. 843, 846-47 (S.D.N.Y. 1993) (ruling that children

---

[4] DOHSA is the exclusive remedy in cases of wrongful death occurring on the high seas and applies in this case. In re Air Crash off Long Island, 209 F.3d 200 (2d Cir. 2000). I see no merit to plaintiff Mohamed's attempt to raise choice of law issues by suggesting, in a letter submitted by his former attorneys, that whether his parents were residents of the United States "is open to serious question." Plaintiff has previously represented to this Court without equivocation that "my parents were living with me in 1999 in Irvine, CA and I have applied for, and received approval notices for both parties' Green Card Alien resident status as of Nov. 1999." He has also insisted that he "will not accept . . . any course that treats our case as Egyptians" and requested that his family "be treated as a US [sic] family that lost CA residents in this heinous crash." Plaintiff's new assertion about his parents' residence, without any legal argument, seems nothing more than a belated attempt at circumventing the personal representative requirement of DOHSA now that defendants have moved to dismiss.

beneficiaries have no right to sue on their own behalf). The personal representative must commence the action within the three year DOHSA statute of limitations period, which accrues at the time of death. 46 U.S.C. § 30106; Public Adm'r of County of New York v. Angela Compania Naviera, S.A., 592 F.2d 58 (2d Cir. 1979); O'Neill v. Cunard White Star Ltd., 69 F. Supp. 943, 945 (S.D.N.Y. 1946). The two-year period will only be tolled if plaintiff can demonstrate a strong justification for the delay. Public Adm'r of New York, 592 F.2d at 64.

I do not see a strong justification for the delay. Plaintiff filed his complaint on October 30, 2001, in which he alleged that he was suing defendants "individually and as personal representative" of his parents' estate. Emails submitted by defendants indicate that shortly after defendants filed their answer in 2002, which asserted lack of capacity as an affirmative defense, plaintiff Mohamed's attorney wrote to plaintiff enclosing a "Petitioner for Probate" for plaintiff to sign so that he could be "promptly appointed administrator." Yet plaintiff Mohamed was first appointed personal representative of his parent's estate on September 14, 2009, nearly ten years after his parent's death on October 31, 1999. Clearly, the process of appointing plaintiff representative of his parents' estate was not completed within the statute of limitations.

In a submission filed on June 27, 2008, plaintiff explained that the reason he had never been appointed personal representative was that that his lawyer: "started the process to establish a CA estate for my parents with myself as the trustee, however they never completed that process, nor did they file the forms before the CA superior court, although I signed all the forms they sent me in 2001."

Unfortunately for plaintiff, his attorney's failure to complete the appointment process when it should have been completed does not justify tolling the statute of limitations period. Having chosen to retain his attorney, plaintiff is responsible for his attorney's negligent conduct

or bad advice in connection with the action. See Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980) ("Absent a truly extraordinary situation...the client is not excused from the consequences of his attorney's nonfeasance."). Plaintiff voluntarily chose his attorney as his representative and cannot avoid the consequences of his attorney's omissions. See Link v. Wabash R.R. Co., 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390-90 (1962). Moreover, plaintiff's subsequent efforts to obtain personal representative status since 2001 indicate that he was personally aware that he did not have the right to bring the action without first becoming a representative of his parents' estates.

Contrary to plaintiff's assertions, Rule 17(a) does not relate back his recent appointment as personal representative to the commencement of the action. Plaintiff misapprehends the purpose of relation back, which, as the Advisory Committee notes, is "intended to prevent forfeiture when determination is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17(a) advisory committee's note (1966)[5]; See also Del Re v. Prudential Lines, Inc., 669 F.2d 93 (2d Cir. 1982) (emphasizing that the function of Rule 17(a) is not to create substantive rights but to avoid forfeiture when it is unclear at the time the action is filed who had the right to sue). Rule 17(a) has no application to plaintiff Mohamed, who filed this lawsuit when he had no cause of action and later obtained the cause of action through his appointment as a representative. See Cao v. Nguyen, No. 92-1669, 1992 WL 373563, *2 (E.D. La. Dec. 7, 1992) (recently appointed administratix could not relate her appointment back to the initial filing

---

[5] In fact, after the explanation of how Rule 17(a) is meant to apply, the Advisory Note uses an illustration, surprisingly close to the instant case, of how the rule is *not* meant to apply. The Note states that Rule 17(a) "does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim and have the benefit of suspension of the limitation period."

of her DOHSA claim since she was aware, when she sued, who the proper party to bring suit was).

Finally, I disagree with Mohamed that defendants have waived their right to challenge his capacity to sue by failing to raise it before this motion. Federal Rule of Civil Procedure 9(a) requires that the lack of capacity defense be raised "by a specific denial, which must state any supporting facts that are peculiarly within the parties' knowledge." Fed. R. Civ. P. 9(a). The capacity defense is an affirmative defense, and can be waived if not raised "in a timely matter, i.e., at the outset of the lawsuit." Pressman v. Estate of Steinvorth, 860 F. Supp. 171, 176 (S.D.N.Y. 1994).

Defendants asserted lack of capacity to sue as an affirmative defense in their answer to the *Mohamed* complaint at the beginning of the lawsuit. They were under no obligation to move to dismiss at an earlier stage having previously preserved the defense, particularly in light of the protracted nature of these proceedings. Defendants note, and I find it significant, that between 2002 when defendants filed their answer and 2009 when defendants again raised plaintiff's lack of capacity in a status letter to the Court, defendants did not move to dismiss because plaintiff Mohamed took no action in the litigation which would have put his capacity to sue at issue.

III.    Failure to Prosecute

The remaining two motions are defendants' motion to dismiss the plaintiffs in Case Nos. 8, 10, 13, 21, 28, 33, 38, and 40 of the *Mohamed* complaint and remaining plaintiffs in Case No. 12 of the *Dimitri* case (hereinafter "Kassem plaintiffs"). Both motions are based on plaintiffs' failure to prosecute.

Dismissal for failure to prosecute, pursuant to Fed. R. Civ. P. 41(b), is a matter committed to the sound discretion of the district court. Lydell Theatre Corp. v. Loews Corp.,

Page 11 of 21

682 F.2d 37, 43 (2d Cir. 1982). That said, it is "a harsh remedy to be utilized only in extreme

situations." Theilman v. Rutland Hospital, Inc., 455 F.2d 853, 855 (2d Cir. 1972) (per curiam).

The Second Circuit has identified five factors to consider on a motion to dismiss for failure to

prosecute: (1) the duration of plaintiff's failures; (2) whether plaintiff received notice that

further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by

further delay; (4) whether an appropriate balance has been struck between alleviating the court's

calendar congestion and protecting the litigants' due process rights; and (5) whether lesser

sanctions would be appropriate. United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248,

255 (2d Cir. 2004). Not all of the factors need to be present to warrant dismissal, and they

apply regardless of whether plaintiff is represented by counsel or proceeding *pro se*. Doe v.

City of New York, No. 02-cv-10298, 2004 WL 2397191, at *2 (S.D.N.Y. Oct. 25, 2004).

Having closely considered the five factors, I find dismissal appropriate. The fact that this

litigation has dragged on for over nine years and plaintiffs are still only in the preliminary stages

of discovery makes this one of the extreme circumstances warranting the harsh sanction of

dismissal.

1. Duration of Failures

The relevant inquiry for the first factor is twofold: (1) whether the plaintiff is at fault for

failing to prosecute, and (2) whether the plaintiff's failures were of significant duration. Norden

Sys., Inc, 375 F.3d at 255. There is no bright-line rule or "magic number" of months which

constitutes a significant duration, Lopez v. Catholic Charities of Archdiocese of New York, No.

00-cv-1247, 2001 WL 50896, at *4 (S.D.N.Y. Jan 22, 2001), but the Second Circuit has

previously found six months delay to be of sufficient duration to warrant dismissal, Chira v.

Lockheed Aircraft Corp., 634 F.2d 664, 666-68 (2d Cir. 1980), and courts within the Second

Circuit have ruled that a delay between five and ten months "falls comfortably within the time frame" necessary to dismiss. Peters-Turnbull v. Bd. of Educ., No. 96-cv-4914,1999 WL 959375, at *3 (S.D.N.Y. 1999).

The *Mohamed* and *Dmitri* cases have been pending since 2001 and 2000, respectively. The first factor weighs heavily in favor of dismissal in both cases.

    a. *Mohamed*

In *Mohamed*, plaintiffs brought suit on October 31, 2001, nearly two years after the crash giving rise to their claims. At the time, plaintiffs' MDL steering committee had agreed to stay liability discovery pending resolution of EgyptAir's forum non conveniens motions and motions to dismiss certain claims under Article 28 of the Warsaw Convention. The motions were decided August 16, 2004. From that date in 2004 until February 28, 2008, over three and a half years, when plaintiffs' counsel moved to withdraw, plaintiffs took no action in these cases.

Once plaintiffs' counsel moved to withdraw, then-Magistrate Judge Matsumoto ordered plaintiffs to inform the Court whether they consented to the motion. They did, on June 27, 2008, and requested 60 days to seek new counsel. Judge Matsumoto then gave plaintiffs until September 24, 2008. That deadline, the first of many plaintiffs would fail to meet, came and passed. Judge Levy held a status conference on October 6, 2008. Plaintiffs did not attend. Judge Levy held another status conference on December 15, 2008. Again, none of the plaintiffs attended. On January 14, 2009, plaintiffs wrote to the Court requesting an additional 60 days to find counsel. Judge Levy gave plaintiffs until March 20, 2009 to find an attorney. They did not find one. On March 20, 2009, plaintiffs requested an additional 60 days. They did not find an attorney within 60 days. Finally, on July 15, 2009, an attorney, Thomas McLarty, participated in a status conference call with the Court and indicated that he was considering representing

Page 13 of 21

plaintiff Moataz Mohamed. Judge Levy gave Mr. McLarty until August 31, 2009 to file an
appearance. That deadline passed. Finally, on October 25, 2009, over a year and a half after the
deadline first set by Judge Matsumoto for plaintiffs to find a new attorney, nearly five years after
the EgyptAir's motions were denied, and after defendants had moved to dismiss for failure to
prosecute, Mr. McLarty filed notices of appearance on behalf of the plaintiffs in the *Mohamed*
case.

These delays were unquestionably of significant duration. See Samman v. Conyers, 231
F.R.D. 163, 166 (S.D.N.Y. 2005) (finding significant duration where a new attorney wrote the
Court a letter indicating he was considering representing plaintiff more than two years after the
amended complaint was filed and more than ten months since plaintiff's original attorney
withdrew). They are far longer than delays that have typically supported dismissal in other
cases. Chira v. Lockheed Aircraft Corp., 634 F.2d at 666-68 (six-month delay); Lyell Theatre
Corp v. Loews Corp., 682 F.2d 37, 42 (2d Cir. 1982) (noting that delays supporting dismissals
have ranged from a period of months to a period of years).

Part of the delay was unavoidable. The EgyptAir non conveniens and motions to dismiss
took until 2004 to fully brief and decide. But since that date, August 16, 2004, plaintiffs are to
blame for the delay. And their argument that the failure to prosecute during that time was caused
by "incapable previous counsel" has no merit. Second Circuit caselaw clearly holds that a
"plaintiff cannot escape responsibility for failing to prosecute his claim even if his attorney is the
source of the delay." Europacific Asset Mgmt., Corp. v. Tradescape Corp., 233 F.R.D. 344
(S.D.N.Y. 2005) (citing Chira v. Lockheed Aircraft Corp., 634 F.2d at 666.

In addition to their "incapable" attorneys, plaintiffs have offered the following
explanation for their failure to prosecute this case:

> Plaintiffs were previously represented in numerous circumstances in which information
> was given to the Plaintiff and, because of confusion, significant delays in the litigation of
> their cases occurred. Many Plaintiffs thought their claims had already been prosecuted,
> or worse dismissed. Once Plaintiffs' previous counsel withdrew or were terminated by
> their clients, Plaintiff began seeking out representing [sic] all while representing
> themselves *pro se*. As this Court is aware, a great responsibility and effort is necessary to
> fully litigate a case, especially in Federal Court concerning an airplane crash. No one
> Plaintiff is a lawyer or possesses any legal background necessary to represent him or
> herself.

The Court understands that the plaintiffs were proceeding *pro se* once counsel withdrew

in June 2008 and that litigating in federal court for non-lawyers can be confusing. But even

plaintiffs who do not have lawyers may see their cases dismissed if they continue to delay their

cases. See Livecchi v. United States Dep't House & Urban Develop, 153 Fed. Appx. 16, 2005

WL 2813834, *1 (2d Cir. 2005). Judge Matsumoto plainly warned plaintiffs after counsel

withdrew that if they could not find counsel, they would be required to prosecute the case *pro se*.

They have not done so. Plaintiffs have not attended case management hearings or status

conference by telephone or in person. They have propounded no discovery.[6] The contention

that they were confused all these years seems disingenuous in light of their failure to participate

at all in these proceedings.

Indeed, plaintiffs' failure to propound discovery requests throughout the pendency of this

motion and the confusion newly retained counsel has had in both filing notices of appearances

and in responding to defendants' motion, convince me that the future of this case would look

much like its past; repeatedly missed deadlines followed by untimely requests to the Court for

additional time.[7]

---

[6] Plaintiffs' assertion that the parties reached an agreement staying discovery after EgyptAir's motions were decided
is refuted by defendants and unsupported either in plaintiffs' papers or in the Court record.

[7] It is worth noting that Mr. McLarty's submission in opposition to defendants' motion to dismiss plaintiff
Mohamed's claim has no substance of its own. Instead, it is a one page motion, purporting to incorporate by

For the *Mohamed* plaintiffs, the first factor militates strongly in favor of dismissal.

b. *Dmitri Case No. 12*

The *Dmitri* Complaint was filed in California state court, Alameda County, before the *Mohamed* complaint on October 31, 2000. As in *Mohamed*, the MDL steering committee agreed to stay liability discovery pending the Court's rulings on EgyptAir's motions. Between the date when the EgyptAir motions were decided on August 16, 2004 and the date when counsel for the Kassem plaintiff's filed their motion to withdraw on October 12, 2007, citing irreconcilable differences, plaintiffs sought no discovery and took no action to prosecute the case. In her Report and Recommendation dated July 22, 2008, Judge Matsumoto recommended that counsel be allowed to withdraw and stated that she "fully informed plaintiffs that should they not obtain replacement counsel and decide to proceed *pro se* 'they must be aware that they will be obligated to prosecute their claims.'" She recommended that plaintiffs be given until September 24, 2008 to find new counsel to appear. As in *Mohamed*, that deadline passed without contact from the Kassem plaintiffs. Then, on January 14, 2009, the Kassem plaintiffs wrote to the Court requesting two months to "complete the procedures of hiring an attorney." As that deadline neared, on March 19, 2009, Kassem plaintiffs again requested an additional sixty days.

That was the last the Court heard from the Kassem plaintiffs. They did not participate in the status conferences held before Magistrate Judge Levy on April 30, July 15 or September 8, 2009. On October 25, 2009, after defendants filed their motion to dismiss for failure to prosecute, Mr. McLarty filed a notice of appearance for the Kassem plaintiffs.

---

reference an October 14, 2009 letter attached as an exhibit, written by the Nolan Law Group, plaintiffs' former attorneys of record. The submission reflects either very little time put into the case, a lack of familiarity with federal court practice, or a curious attempt to circumvent Rule 11 which requires "every pleading, written motion, and other paper" to be "signed by at least one attorney of record in the attorney's name..." Fed. R. Civ. P. 11.

Like the *Mohamed* plaintiffs, the delay in prosecuting the case for the Kassem plaintiffs has been significant. Unlike the *Mohamed* plaintiffs, however, the Kassem plaintiffs' opposition to the defendants' motion for failure to prosecute and explanation for the delay is virtually unintelligible. Though labeled "Plaintiffs submit Response to Defendant's Motion to Dismiss for Failure to Prosecute," the document is entirely concerned with defendants' motion to enforce the 2003 settlement agreement and is devoid of any explanation for the Kessem plaintiffs' failure to prosecute since the Court's decision on the EgyptAir motions. Seeing none, I find that the fault for the delay since the 2004 EgyptAir decisions rests with them.

For the Kassem plaintiffs, the first factor also points towards dismissal.

2. Notice of Dismissal

The Second Circuit requires that plaintiffs receive adequate notice that the case could be dismissed due to inaction. Martens v. Thomann, 273 F.3d 159, 180-81 (2d Cir. 2001).

Here, there is no dispute that both the *Mohamed* and Kassem plaintiffs received notice that the case could be dismissed. By order dated June 3, 2008, Judge Matsumoto warned plaintiffs that if they consented to the withdrawal of counsel, they would "be obligated to prosecute their clams *pro se* or risk dismissal pursuant to Federal Rule of Civil Procedure 41." Again in her Report and Recommendation Judge Matsumoto reiterated that she "fully informed plaintiffs that should they not obtain replacement they must be aware that they will be obligated to prosecute their claims or risk dismissal pursuant to Federal Rule of Civil Procedure 41." Far less formal notice is required to fulfill this requirement. See Peart v. New York, 992 F.2d 458 (2d Cir. 1993) (ruling that the Court's pre-trial conference admonition that the case would be dismissed if plaintiff did not appear for trial is sufficient for 41(b) purposes).

Page 17 of 21

In response, the *Mohamed* plaintiffs concede that they were made aware of Rule 41(b) dismissal but argue that they had no "knowledge of the extent and severity of Rule 41 to their claims." I find the argument unavailing.

Judge Matsumoto instructed plaintiffs that if they failed to obtain counsel they would be "obligated to prosecute their claims *pro se* or risk dismissal." This clearly conveyed the likely consequences of prosecuting their claims. See, e.g., Edwards v. INS, 59 F.3d 5, 8 (2d Cir. 1995) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them."). The word "dismissal" is not complicated. Indeed, after Judge Matsumoto's Order of June 3, 2008, plaintiffs in the *Mohamed* case filed a letter with the Court regarding their retention of a legal advisor. Nowhere in that letter or in any affidavits accompanying plaintiffs' instant opposition to the motion to dismiss for failure to prosecute do they suggest they were confused with respect to Judge Matsumoto's admonition. Even *pro se* litigants have "an obligation to comply with court orders," and "must suffer the consequences" when they are ignored. McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988).

### 3. Prejudice to Defendants

The third factor to consider is whether the defendants are "likely to be prejudiced by further delay." Prejudice to defendant may be presumed where a delay in prosecution is neither moderate nor excusable. Peart, 992 F.2d at 462. Delays of considerable length make likely the chance that "witnesses' memories have faded and that witnesses who might once have been available may not be found." See Dodson v. Runyon, 957 F. Supp. 465 (S.D.N.Y. 1997) (eleven-year delay caused prejudice); Livecchi v. U.S. Dept. of Housing and Urban Development, 153 Fed. Appx. 16, 2005 WL 2813834 (2d Cir. 2005) (thirteen-year delay

prejudicial); see also Lukensow v. Harley Cars of New York, 124 F.R.D. 64, 67 (S.D.N.Y. 1989) (two-year delay "with no end in sight" evidence of prejudice to defendants).

Defendants' ability to defend this litigation has been severely compromised by plaintiffs' delays. As noted, some of the delay is due to the length of time it took to resolve EgyptAir's motions. But the prejudice to defendants, now eleven years from the date of the accident in question, cannot be understated. The investigation of the crash was completed on March 25, 2002. In both the *Mohamed* and *Dmitri* cases there is a strong likelihood that the witnesses who can be located will have faded or hazy memories and that any remaining physical evidence will be hard to find. More concretely, defendants explain that the EgyptAir 990 investigation included analysis of radar returns, cockpit voice recordings, the data from the aircraft's digital flight data recorder, visual and metallurgical inspections of components recovered from the wreckage, flight simulation studies, component bench tests, aircraft ground tests of simulated failures and human factors studies. Most of this work was done between the time of the crash and the issuance of the investigation report in March 2002. Since then, many of those involved in the investigation, including the Chairman of the National Transportation Safety Board, have moved on to other jobs.

Plaintiffs are just beginning to investigate this eleven year old crash. Their opposition to this motion, in which they ask to initiate discovery serves only to underscore the fact that if this litigation were to move forward, there would be no end in sight.

The third factor strongly favors dismissal.

4. Balance between Calendar Congestion and Due Process Rights

The fourth factor requires the court to consider the balance between calendar congestion and the plaintiff's right to present his or her own case. Norden Sys., 375 F.3d at 257. A court

Page 19 of 21

"must not let its zeal for a tidy calendar overcome its duty to justice. Davis v. United Fruit Co.
402 F.2d 328 (2d Cir. 1968). In assessing the fourth factor, the court considers the type of delay
perpetrated by plaintiffs. If the delay was "silent and unobtrusive rather than vexatious and
burdensome," meaning, plaintiff "did not make submissions required by the court" rather than
"swam[ping] the court with irrelevant filings," the fourth factor tends to favor the plaintiff.
LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 210 (2d Cir. 2001). There must be
"compelling evidence of an extreme effect on court congestion before a litigant's right to be
heard is subrogated to the convenience of the court." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir.
1996).

Although plaintiffs' inaction may have caused the Magistrate Judges to conduct status
conferences and scheduling conferences and this Court to issue several orders, the overall effect
on docket congestion has not been significant. But that does not tip the scales plaintiffs' way,
since they have been given numerous opportunities to prosecute this case and have repeatedly
failed to do so. Dodson v. Runyon, 957 F. Supp. at 470 ("any claim that plaintiff's due process
rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's
case are of his own making").

The fourth factor too, although perhaps not as strongly as the others, points towards
dismissal.

5. Consideration of Lesser Sanctions

Lastly, a district court must consider whether sanctions less severe than dismissal would
be effective. Shannon v. GE, 186 F.3d 186 (2d Cir. 1999). Unfortunately, no other sanction is
adequate here. There is no point in subjecting defendants to the cost and delay that alternative
sanctions would likely produce. This case has not progressed past the point of initial discovery

and plaintiffs' past inaction gives the Court no reason to believe that granting them another chance to prosecute this case would serve any useful purpose. Where prior warnings of dismissal and repeated extensions of deadlines do not result in better conduct, dismissal is favored. Samman v. Conyers, 231 F.R.D. 163, 2005 WL 1414393, at *4 (S.D.N.Y. 2005). Prior warnings and repeated extensions of the deadlines have not resulted in better conduct from the plaintiffs. Monetary sanctions would prove difficult, if not impossible to enforce as many of the plaintiffs reside in Egypt. Dismissal is therefore appropriate.

## CONCLUSION

For the foregoing reasons, defendants' motions are granted and plaintiffs' claims are dismissed.

The Clerk of the Court is directed to mail a copy of this Memorandum Decision and Order to *pro se* parties.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
March 29, 2010