
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

MOATAZ MOHAMED, Individually and as Personal Representative of the Estates of ALY RASHAD ALY MOHAMED and BARIA ZAKI MOHAMED, deceased,

                    Plaintiffs,
  -against-

DONALD J. NOLAN, LTD. d/b/a NOLAN LAW GROUP and DONALD J. NOLAN, Individually,

                    Defendants.

------------------------------------------------------------------------ x

**Case No.: CV 12 3139**
**Judge: Johnson**
**Magistrate: Azrack, M.J.**

## Memorandum of Law in Support of Defendants' Motion to Dismiss

5222042v.3

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| STATEMENT OF FACTS | 2 |
| Argument | 3 |
|     A. Standards Governing Dismissal For Failure To State Cause Of Action | 4 |
|     B. Standard For Legal Malpractice in New York | 4 |
|     Point I: The Claims Are Time-Barred | 5 |
|     Point II: Plaintiffs Cannot Establish Proximate Causation As They Could Have Prosecuted Their Claims Long After Defendants Were Relieved As Counsel | 7 |
|     Point III: The Claims Are Subject To Dismissal As Unduly Speculative | 9 |
|     Point IV: Plaintiff's Claim For Punitive Damages is Subject To Dismissal | 12 |
| Conclusion | 14 |

# TABLE OF AUTHORITIES

## CASES

*Albin v Pearson,* 289 A.D.2d 272, (2nd Dep't 2001) .......................................................... 9

*Barbara King Family Trust v. Voluto Ventures LLC,*
46 A.D.3d 423, 849 N.Y.S.2d 41, 43 (1st Dep't 2007) ...................................................... 11

*Becker v. Julien Blitz & Schlesinger,*
66 A.D.2d 674, 411 N.Y.S.2d 17, 18 (1st Dep't 1978 ) .................................................... 10

*Boyd v. Gering, Gross & Gross,*
641 N.Y.S.2d 108 (2d Dep't 1996) ................................................................................... 5

*Brooks v. Lewin,*
21 A.D.3d 731, 734, 800 N.Y.S.2d 695, 697 (1st Dep't 2005) ..................................... 4, 11

*Campagnola v. Mulholland,*
76 N.Y.2d 38, 47-48 (N.Y. 1990) .................................................................................... 12

*Gebhardt v. Allspect, Inc.,*
96 F.Supp.2d 331, 333 (S.D.N.Y. 2000) ........................................................................... 4

*Glamm v. Allen,* 57 N.Y.2d 87,
453 N.Y.S.2d 674, 439 N.E.2d 390 (1982) ....................................................................... 5

*Hayden v. County of Nassau,*
180 F.3d 42, 54 (2d Cir. 1999) .......................................................................................... 4

*Johnston v. Raskin,*
193 A.D.2d 786, 598 N.Y.S.2d 272 (2d Dep't 1993) ........................................................ 5

*Kozmol v Law Firm of Allen L. Rothenberg,*
241 A.D.2d 484, (2nd Dep't 1997) .................................................................................... 9

*Max Markus Katz v. Herzfeld & Rubin, P.C.,*
48 A.D.3d. 640, 641 (2nd Dep't 2008) .............................................................................. 9

*McCoy v. Feinman,* 99 N.Y.2d 295, 301 (2002) ................................................................ 5

In Re Nantucket Air Crash, Case No. 00 md 01344,
filed July 22, 2008 (U.S.D.C.E.D.N.Y.) ........................................................................ 3, 6

5222042v.3

*Pellegrino v. File,*
291 A.D.2d 60, 738 N.Y.S.2d 320, 323 (1st Dep't 2002)..........................................4, 5, 10

Perks v Lauto & Garabedian,
306 A.D.2d 261, (2nd Dep't 2003) ....................................................................................9

*Phillips-Smith Specialty Realty Group II, L.P. v Parker Chapin Flattau & Klimpl,*
265 A.D.2d 208, 210, (1st Dep't 1999)...........................................................................11

*Ramcharan v Pariser,*
20 AD3d 556 (2nd Dep't 2005) .........................................................................................9

*Russo v. Feder, Kaszovitz, Isaacson, Weber, Skala & Bass, LLP,*
301 A.D.2d 63, 750 N.Y.S.2d 277, 281 (1st Dep't 2002) .................................................4

*Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994).........................................................4

*Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002).........................4

*Tal-Spons Corp. v. Nurnberg,*
213 A.D.2d 395, 623 N.Y.S.2d 604 (2d Dep't 1995)........................................................5

*Wexler v. Shea & Gould,*
211 A.D.2d 450, 451, 621 N.Y.S.2d 858 (1st Dep't 1995)..............................................10

*Zarin v. Reid & Priest,*
184 A.D.2d 385, 585 N.Y.S.2d 379 (1st Dep't 1992)......................................................12

*Zerilli- Edelglass v. N.Y. City Transit Auth.,*
333 F.3d 74, 79 (2d Cir. 2003) ..........................................................................................4

## STATUTES

F.R.C.P. 12(b) ......................................................................................... 1, 2, 3, 4, 12, 14

## MISCELLANEOUS

CPLR § 214 ...........................................................................................................................5

## Preliminary Statement

By his Amended Complaint, Moataz Mohamed, Individually and as Personal Representative of the Estates of Aly Rashad Aly Mohamed and Baria Zaki Mohamed ("Plaintiff" or "Mohamed") purports to assert a claim for legal malpractice against the Donald J. Nolan, LTD. d/b/a Nolan Law Group, and Donald J. Nolan ("Defendants" or "Nolan") arising out the 1999 Egypt Air Flight 990 that crashed into the Atlantic in the vicinity of Nantucket, Massachusetts. Plaintiff's parents were killed in the crash. Specifically, plaintiffs allege within this action that supposed valid claims for the wrongful death of his parents were lost as a result of alleged negligence of his attorneys.

As demonstrated below, however, the claims against Defendants fail to state a cause of action under F.R.C.P. 12(b)(6). The claims are insufficient because they were filed more than three years after the Defendants were relieved as counsel, well beyond the time permitted within which to bring an action for legal malpractice in New York. The claims also fail to sufficiently plead proximate causation in that the claims were not lost when the Defendants were relieved as counsel and could have been and were prosecuted for more than one and one half years after defendants were relieved as counsel. New York law is clear in that a claim does not exist against former counsel if subsequent counsel could have prosecuted the claims. Additionally, the claims are speculative and not actionable in that plaintiffs cannot establish that that the release with EgyptAir could have been avoided, and it is pure speculation that the underlying action could have been settled for a higher sum. Finally, as the claims do not allege willful or malicious conduct, claims for punitive damages do not exist. For these reasons, Defendants respectfully request that the Amended Complaint and each and every cause of action set forth

5222042v.3

therein be dismissed as insufficient to state a cause of action upon which relief may be granted pursuant to F.R.C.P. 12(b)(6).

## STATEMENT OF FACTS

According to the Amended Complaint, on October 31, 1999, EgyptAir Flight 990 en route from Los Angeles to Cairo International Airport, with a scheduled stopover at John F. Kennedy Airport in New York, crashed into the Atlantic Ocean approximately sixty miles south of Nantucket Island, Massachusetts. (Francoeur Aff. Ex. A, ¶8, 11). Within forty days of the crash, Plaintiff and his family members were approached by EgyptAir and entered into a settlement whereby Plaintiffs settled their claims in exchange for a full release of all claims. (Francoeur Aff. Ex. A, ¶20, 24).

Subsequent to the EgyptAir settlement, on August 19, 2000, Plaintiffs retained Defendants as their attorneys to pursue wrongful death claims against the Boeing Company and the Parker Hannifin Corporation. (Francoeur Aff. Ex. A, ¶28). Defendants later moved to withdraw as counsel on February 28, 2008 (Francoeur Aff. Ex. B p.2), and when the Plaintiffs were asked by the Court whether they consented to the motion to withdraw, they did so on June 27, 2008. (Exhibit C p. 13 to Francoeur Aff. Ex. A). After the Defendants filed their motion to be relieved as counsel, the court on June 3, 2008 warned Plaintiffs that if they consented to the withdrawal of counsel they would be obligated to prosecute their claims *pro se* or risk dismissal. (Exhibit C p. 17 to Francoeur Aff. Ex. A). Despite the warnings of the court, Plaintiffs failed to take any further steps to prosecute the underlying action for more than a year and half, missing court-ordered deadlines and status conferences until July 15, 2009, when a new attorney was retained. (Exhibit C p. 13 to Francoeur Aff. Ex. A).

5222042v.3

On July 22, 2008, Magistrate Judge Kiyo A. Matsumoto issued a Report and Recommendation that the motion of the Defendants to withdraw as counsel be granted. (*See* Docket Entry 514, *In Re Nantucket Air Crash*, Case No. 00 md 01344, filed July 22, 2008, U.S.D.C. E.D.N.Y.). On August 15, 2008, District Judge Cogan adopted the Report and Recommendation of Magistrate Matsumoto and ordered that the Defendants' motion to withdraw be granted, thus officially ending the representation. (*See* Docket Entry 519, *In Re Nantucket Air Crash*, Case No. 00 md 01344, filed August 15, 2008, U.S.D.C. E.D.N.Y.).

The underlying action was dismissed by Judge Cogan on March 29, 2010, finding that courts prior warnings and repeated extensions were ignored, making dismissal appropriate. (Exhibit C p. 21 to Francoeur Aff. Ex. A). Plaintiffs filed the instant action by fling the original complaint on June 22, 1012, (Francoeur Aff. Ex. D) followed by the filing of an Amended Complaint on August 1, 2012.

## ARGUMENT

The claims against Defendants are subject to dismissal as the Amended Complaint, which incorporates the Memorandum Decision and Order of District Judge Cogan dated March 29, 2010 by reference, fails to state a cause of action under F.R.C.P. 12(b)(6). The claims individually and collectively, are insufficient because they i) are time barred, ii) fail to sufficiently plead proximate causation in that the claims could have been prosecuted after defendants were relieved as counsel, iii) are unduly speculative, and iv) do not allege willful or malicious conduct which is an essential element of a claim for punitive damages. Thus, for the reasons set forth below, Defendants respectfully request that the Amended Complaint, and each and every cause of action therein, be dismissed as insufficient to state a cause of action upon which relief may be granted.

### A. Standards Governing Dismissal For Failure To State A Cause Of Action

For purposes of the motion to dismiss pursuant to FRCP 12(b)(6), this Court should consider all facts "stated in the Amended Complaint, documents attached to the Amended Complaint as exhibits, and documents incorporated by reference in the Amended Complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). While "the court must accept the factual allegations contained in the Amended Complaint as true, and view the pleadings in the light most favorable to the non-movant, drawing all reasonable inferences in its favor," *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), even this lenient standard does not permit this action to continue in light of the points raised in this motion. Indeed, dismissal is appropriate under Fed. R. Civ. P. 12(b)(6), where, as here, "if it appears beyond doubt that a plaintiff can prove no set of facts entitling it to relief in support of its claim." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003). The law is clear that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002), quoting *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (internal citation and quotation marks omitted).

### B. Standard For Legal Malpractice in New York

An action for legal malpractice requires proof of three elements: (1) that the attorney was negligent; (2) that such negligence was a proximate cause of the plaintiff's losses; and (3) proof of actual damages. *Brooks v. Lewin*, 21 A.D.3d 731, 800 N.Y.S.2d 695, 697 (1st Dept. 2005); *Pellegrino v. File*, 291 A.D.2d 60, 738 N.Y.S.2d 320, 323 (1st Dept. 2002); *Russo v. Feder, Kaszovitz, Isaacson, Weber, Skala & Bass, LLP*, 301 A.D.2d 63, 750 N.Y.S.2d 277, 281 (1st Dept. 2002).

It is not sufficient to avoid dismissal for a claim alleging legal malpractice to merely plead that mistakes were made or that certain tasks were not performed. "In order to survive dismissal, the complaint must show that but for counsel's alleged malpractice, the plaintiff would not have sustained some actual ascertainable damages, so that a failure to establish proximate cause requires dismissal regardless whether negligence is established." *Pellegrino v. File*, 291 A.D.2d 60, 738 N.Y.S.2d 320, 323 (1st Dep't 2002) (internal citations omitted).

### Point I:   The Claims Are Time-Barred

In order to assert a claim for legal malpractice in New York, the action must be filed within three years of the alleged malpractice. On its face, the Amended Complaint in the instant action is barred by the statute of limitations contained in CPLR § 214(6) as the action was not filed until more than three years after the Defendants were relieved as counsel.

In New York, an action to recover damages for legal malpractice must be commenced within three years of the alleged act of malpractice. *McCoy v. Feinman*, 99 N.Y.2d 295, 301 (2002). It is well-settled that the period of limitations on a legal malpractice action begins to run when the malpractice is committed. *See Boyd v. Gering, Gross & Gross*, 641 N.Y.S.2d 108 (2d Dep't 1996) citing, *Glamm v. Allen*, 57 N.Y.2d 87, 453 N.Y.S.2d 674, 439 N.E.2d 390 (1982); *Tal-Spons Corp. v. Nurnberg*, 213 A.D.2d 395, 623 N.Y.S.2d 604 (2d Dep't 1995); *Johnston v. Raskin*, 193 A.D.2d 786, 598 N.Y.S.2d 272 (2d Dep't 1993).

Here, the Amended Complaint identifies a list of alleged wrongs including failure to ensure Plaintiff was appointed personal representative, failure to prosecute the case, failure to obtain an adequate settlement, failure to prepare the case for trial, failure to vacate an alleged settlement with EgyptAir and "otherwise" carelessly performed acts. (Francoeur Aff. Ex. A,

¶41, 48). Regardless of the merit of any of these claims, any action against the Defendants must have been filed within three years from, at the latest, the end of the representation, and they were not.

The end of the representation arguably had several points, but even accepting the latest point in time the claims are still time-barred. Defendants' moved to withdraw as counsel on February 28, 2008 (*See* Docket Entry 514, *In Re Nantucket Air Crash*, Case No. 00 md 01344, filed July 22, 2008, U.S.D.C. E.D.N.Y.), and Plaintiffs consented to Defendants' motion to withdraw as counsel on June 27, 2008. (Exhibit C p. 17 to Francoeur Aff. Ex. A). The Magistrate recommended the court grant Defendant's motion to withdraw on July 22, 2008, and District Judge Cogan ordered that the motion to withdraw be granted on August 15, 2008. (*See* Docket Entry 519, *In Re Nantucket Air Crash*, Case No. 00 md 01344, filed July 22, 2008, U.S.D.C. E.D.N.Y.). Thus, even accepting the latest point in time as the end of the representation – August 15, 2008 – any claim for legal malpractice must have been brought by Plaintiffs within three years, or by August 15, 2011. However, this action was not brought until June of 2012.

Defendants anticipate that Plaintiffs may object on the basis that there were two agreements executed on January 26, 2012 and March 19, 2012 that tolled the statute of limitations. However, these agreements were executed *after* the claims were already expired on August 15, 2011. Furthermore, the agreements did not revive any such claims, and in fact contained specific limitations protecting any such existing defenses ("However, this Agreement does not waive and expressly reserves the rights of the Defendants to assert all affirmative defense including the timing defenses, if any, that existed on or <u>before</u> the effective date of this Agreement.") (Francoeur Aff. Ex. B, C ¶ 2).

6

5222042v.3

Therefore, as the claims expired at the latest three years after the Defendants withdrew as counsel, and as the tolling agreements did not revive these rights, and as this action was not filed until June of 2012, the instant litigation is time-barred. Accordingly, as a matter of law, plaintiff's action based upon a claim of legal malpractice must be dismissed in its entirety.

**Point II:    Plaintiffs Cannot Establish Proximate Causation As They Could Have Prosecuted Their Claims Long After Defendants Were Relieved As Counsel**

In New York the cases are legion that no malpractice claim lies against prior counsel, where, as here, any alleged error or omission could have been addressed by subsequent counsel. Judge Cogan outlined in his opinion dismissing the underlying matter (attached to the Amended Complaint as Exhibit C and incorporated by reference herein) the fact that after the Defendants were relieved as counsel, the court afforded Plaintiffs every opportunity to prosecute their action either with new counsel or by proceeding *pro se*. Plaintiffs, however, squandered this opportunity time and again by failing to respond to the Court, meet its deadlines or even to bother to appear at the court's status conferences. (Exhibit C p. 21 to Francoeur Aff. Ex. A). Under New York law, Plaintiff's cannot pursue claims against their former counsel when they had they opportunity to pursue the claims but instead squandered the opportunities.

Judge Cogan's decision dismissing the underlying action identified the numerous lost opportunities Plaintiffs had to prosecute their action, avoid prior settlements with Egypt Air and / or any other item Plaintiffs' claim the Defendants should have done. The decision noted the following:

> Once plaintiffs' counsel moved to withdraw, then-Magistrate Judge Matsumoto ordered plaintiffs to inform the Court whether they consented to the motion. They did, on June 27, 2008, and

7

5222042v.3

> requested 60 days to seek new counsel. Judge Matsumoto then gave plaintiffs until September 24, 2008. That deadline, the first of many plaintiffs would fail to meet, came and passed. Judge Levy held a status conference on October 6, 2008. Plaintiffs did not attend. Judge Levy held another status conference on December 15, 2008. Again, none of the plaintiffs attended. On January 14, 2009, plaintiffs wrote to the Court requesting an additional 60 days to find counsel. Judge Levy gave Plaintiffs until March 20, 2009 to find an attorney. They did not find one. On March 20, 2009 plaintiffs requested an additional 60 days. They did not find an attorney within 60 days. Finally, on July 15, 2009, an attorney, Thomas McLarty, participated in a status conference call with the Court and indicated that he was considering representing plaintiff Moataz Mohamed. Judge Levy gave Mr. McLarty until August 31, 2009 to file an appearance. That deadline passed. Finally, on October 25, 2009, over a year and a half after the deadline first set by Judge Matsumoto for plaintiffs to find a new attorney, nearly five years after the EgyptAir's motions were denied, and after defendants had moved to dismiss for failure to prosecute, Mr. McLarty filed notices of appearance on behalf of the plaintiffs in the *Mohamed* case.

(Exhibit C p. 13-14 to Francoeur Aff. Ex. A).

It is readily apparent that Plaintiffs had multiple opportunities, over a period of one and one half years, to pursue its claims after the Defendants were relieved as counsel. Furthermore, the court then specifically rejected Plaintiff's assertions that it was the fault of former counsel as Judge Cogan found such claims had "no merit," and he rejected the excuse that Plaintiffs were "confused" as he found that "[t]he Court understands that the plaintiffs were proceeding *pro se* once counsel withdrew in June 2008 and that litigating in federal court for non-lawyers can be confusing. *But even plaintiffs who do not have lawyers may see their cases dismissed if they continue to delay their cases.*" (Exhibit C p. 14-15 to Francoeur Aff. Ex. A). Thus, Judge Cogan's decision clearly demonstrates that plaintiffs had many opportunities to prosecute its claims after the Defendants were counsel of record, and that it was their failure to actually prosecute their claims that led to the dismissal.

8

5222042v.3

Because Plaintiffs had the ability to prosecute its claims long after the Defendants were relieved as counsel, plaintiffs cannot establish that any alleged error or omission committed by the Defendants proximately caused any harm. New York law is very clear on this point. In *Max Markus Katz v. Herzfeld & Rubin, P.C.*, 48 A.D.3d. 640, 641 (2nd Dept. 2008), the Appellate Division, Second Department, affirmed the dismissal of a legal malpractice claim that was based on the failure of the attorney to pursue certain claims of their client. The court found that because the counsel was replaced and new counsel had the opportunity to pursue the claim, plaintiff could not establish proximate causation. (*See also Ramcharan v Pariser*, 20 AD3d 556, (2nd Dep't 2005) (dismissal against former counsel proper where subsequent counsel could have responded to CPLR 3226 demand); *Perks v Lauto & Garabedian*, 306 A.D.2d 261, (2nd Dep't 2003) (dismissal of former attorney where subsequent counsel had opportunity to investigate assets and insurance of driver); *Albin v Pearson,* 289 A.D.2d 272, (2nd Dep't 2001) (former attorney dismissed where subsequent counsel could have foreclosed on property); *Kozmol v Law Firm of Allen L. Rothenberg*, 241 A.D.2d 484, (2nd Dep't 1997) (dismissal of former counsel proper where subsequent counsel had 120 days to file action).

Accordingly, as Plaintiffs had the opportunity to pursue its claims well after the Defendants were relieved as counsel, Plaintiffs cannot establish proximate causation. Therefore, Defendants are entitled to dismissal.

## Point III:  The Claims Are Subject To Dismissal As Unduly Speculative

Despite the laundry list of alleged wrongs in the Amended Complaint (failure to appoint personal representative, prepare for trial, prosecute case, etc.), the thrust of the Plaintiffs' case is that the Plaintiffs could have obtained a better settlement than the one previously obtained from

9

5222042v.3

EgyptAir. Plaintiffs' entire case is wrought with speculation in claiming that they i) could have avoided the binding waiver of all claims in the first settlement (signed *prior* to the retention of the Defendants), and ii) that a "million" dollar settlement was inevitable in this case. In New York, malpractice actions premised on such speculative claims are not permissible.

Courts in New York have routinely dismissed actions based upon the very claim in the case at bar – namely that had the attorney acted differently a better settlement could have been achieved. The Appellate Division, First Department, stated in *Wexler v. Shea & Gould*, 211 A.D.2d 450, 451, 621 N.Y.S.2d 858 (1st Dep't 1995):

> [P]laintiff submits no more than mere speculation as to what might have occurred had defendants conducted themselves differently under possible factual scenarios. Plaintiff's claim that he was forced and coerced into entering into the settlement agreement is without merit. Plaintiff signed the agreement which states that he entered into it "'freely and voluntarily," and there is no proof that had plaintiff not entered into the agreement he would have obtained a better result.

*See also, Pellegrino v. File*, 291 A.D.2d 60, 64; 738 N.Y.S.2d 320, 323 (1st Dep't 2002) ("[S]peculative damages cannot be a basis for legal malpractice"); *Becker v. Julien Blitz & Schlesinger*, 66 A.D.2d 674, 411 N.Y.S.2d 17, 18 (1st Dep't 1978) ("[I]nsofar as this action rests upon a claim that defendants' misconduct resulted in an unfavorable settlement of plaintiff's underlying claim against Zale Corporation, the complaint must be dismissed for the reason that it can only be the sheerest speculation whether a different handling of the case by defendants-attorneys, or participation by a particular member of defendant's firm, would have resulted more favorably to plaintiff than the settlement that was actually made.").

Speculative or conclusory claims of damages, or those couched in terms of gross speculations on future events, are insufficient as a matter of law to establish that a defendant's

negligence, if any, was the proximate cause of a plaintiff's injuries. *Barbara King Family Trust v. Voluto Ventures LLC,* 46 A.D.3d 423, 849 N.Y.S.2d 41, 43 (1st Dep't 2007) (Dismissing legal malpractice claim where plaintiff-client relied on nothing but speculation to support her assertions that "but for" the law firms advice, she would have successfully been able to acquire real property); *Brooks v. Lewin,* 21 A.D.3d 731, 734 (1st Dep't 2005); *Phillips-Smith Specialty Realty Group II, L.P. v Parker Chapin Flattau & Klimpl,* 265 A.D.2d 208, 210, (1st Dep't. 1999).

The Amended Complaint readily admits that "within forty (40) days of the crash, Plaintiff and his family members were approached by EgyptAir" and Plaintiffs settled their claims "in exchange for a full release by the Plaintiff and his family members from EgyptAir." (Francoeur Aff. Ex. A ¶20, 24). The Defendants were not retained until after the settlement with EgyptAir, and thus this earlier settlement is not part of the present claim. (Francoeur Aff. Ex. A ¶27). As Plaintiffs admit that the settlement involved a "full release" and there is nothing pled supporting a basis to avoid this release, it is therefore speculative to say this release could have been avoided.

Furthermore, Plaintiffs speculate that they could have obtained a million dollar settlement because "plaintiffs (other than the Mohameds) in the Underlying Case against Boeing and Park Hannifin Corporation were settling their claims for in excess of one (1) million dollars as a result of competent representation. The plaintiff, represented by the defendants, lost the opportunity to obtain this result." (Francoeur Aff. Ex. A ¶17, 18). However, there are no pled facts supporting this conclusion, nor is it pled that these others had obtained such results while being saddled with the release of all claims like the Plaintiffs in this action. Even if the Amended Complaint contained such allegations that Plaintiffs were similarly situated with "others" (which it does not) it would *still* be unduly speculative to say that they could have also achieved such results.

11

Because it is pure speculation to say Plaintiffs could have avoided the full release of all claims and achieved a higher settlement, the claims must be dismissed. Damages claimed in a legal malpractice action must be actual and ascertainable resulting from the proximate cause of the attorney's negligence, and dismissal is proper where damages claimed are too speculative and incapable of being proven with any reasonable certainty. *Zarin v. Reid & Priest*, 184 A.D.2d 385; 585 N.Y.S.2d 379 (1st Dept. 1992). Thus, this claim fails to state a cause of action as a matter of law and should be dismissed pursuant to FRCP 12 (b)(6).

### Point IV: Plaintiff's Claim For Punitive Damages is Subject To Dismissal

The New York Court of Appeals has spoken clearly that absent some alleged willful, malicious conduct, claims for punitive damages should be dismissed. In *Campagnola v. Mulholland*, 76 N.Y.2d 38, 47-48 (N.Y. 1990), the Court of Appeals held

> Defendants are exposed in liability for the full amount available to plaintiff for successful completion of the services but they should not be punished by adding to that sum the amount of an attorney's fee that plaintiffs are not now and never have been entitled to receive. To do so adds an amount of punitive damages to the claim for simple negligence, contrary to our decisions providing that punitive damages are allowable only when the high threshold of moral culpability is satisfied, cases involving gross or wanton negligence or willful, malicious conduct (citations omitted).

Even taking the allegations of the Amended Complaint as true, there are no allegations satisfying a "high threshold of moral culpability" or "gross or wanton negligence" or "willful, malicious conduct." Instead, the alleged wrongs involve *simple negligence* such as failing to have Plaintiff appointed personal representative, failure to prosecute the case, failure to obtain an adequate settlement, failure to prepare they case for trial, failure to vacate an alleged settlement with EgyptAir and "otherwise" carelessly performed acts." (Francoeur Aff. Ex. A ¶41, 48).

12

There is nothing willful or malicious alleged in the Amended Complaint, and as such the claim for punitive damages should be dismissed.

## CONCLUSION

Accordingly, in light of the foregoing it is respectfully requested that an Order should be entered in favor of defendants Donald J. Nolan, LTD. d/b/a Nolan Law Group and Donald J. Nolan pursuant to Fed. R. Civ. P. 12(b)(6) dismissing the Amended Complaint, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
October 11, 2012

Yours, etc.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Thomas A. Leghorn
Joseph L. Francoeur (JF 8874)
Attorneys for Defendants
DONALD J. NOLAN, LTD. d/b/a NOLAN LAW GROUP and DONALD J. NOLAN
150 East 42nd Street
New York, New York 10017-5639
Tel.: (212) 490-3000
Fax: (212) 490-3038
File No. 24.75584

TO: ADAM H. RUSS, ESQ.
WASSER & RUSS, LLP
Attorneys for Plaintiff
MOATAZ MOHAMED, Individually
and as Personal Representative of the
Estates of Aly Rashad Aly Mohamed
and Baria Zaki Mohamed
80 Maiden Lane, Suite 1502
New York, NY 10038
(212) 430-6040

AMIR TAHMASSEBI, ESQ.
Attorney for Plaintiff
Via Email Only - amir@konicekdillonlaw.com

5222042v.3